UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:25-CV-00129-MEO

| | |
|---|---|
| TANYA D. DIXON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **MEMORANDUM & ORDER** |

**THIS MATTER** is before the Court on Plaintiff Tanya D. Dixon's Complaint (Doc. No. 1) seeking judicial review of an unfavorable decision by the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Having fully considered the arguments in the record, the Court finds that the Commissioner's decision to deny Plaintiff benefits under Title II of the Social Security Act is supported by substantial evidence and uses the correct legal standards. Accordingly, the Court will affirm.

## I. BACKGROUND

The Court adopts the procedural history as stated in the parties' briefs and discusses relevant portions below. *See* (Doc. Nos. 6 at 2; 7 at 1–2). Plaintiff filed the present action on August 22, 2025. (Doc. No. 1). She raises two substantive issues on appeal. First, she assigns error to the Administrative Law Judge's ("ALJ") determination of her Residual Functional Capacity ("RFC"). Specifically, Plaintiff argues the ALJ should have recontacted one of her examining physicians to clarify ambiguous medical evidence. (Doc. No. 6 at 3). Second, Plaintiff argues that the ALJ

improperly based her RFC on a lay interpretation of raw medical data. *Id.* at 7.

## II. LEGAL STANDARD

The Court "must uphold the ALJ's decision if the ALJ applied correct legal standards and if the factual findings are supported by substantial evidence." *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025). Here, Plaintiff disputes only the substantial evidence prong. *See* (Doc. No. 6 at 3).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Drumgold*, 144 F.4th at 604 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). Under this standard, a reviewing court "only look[s] to make sure that *something* 'more than a mere scintilla' supports the decision" reached by the ALJ. *Id.* (quoting *Biestek*, 587 U.S. at 103). This is a "case-by-case" inquiry in which the Court "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 587 U.S. at 108.

Substantial evidence "isn't a high threshold." *Drumgold*, 144 F.4th at 60. "Yet even under this deferential standard, [courts will] not reflexively rubber-stamp an ALJ's findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quotation marks omitted). "The reason . . . is that [judicial] *re*view is possible only when someone has first articulated a view." *Drumgold*, 144 F.4th at 605. The Court must ensure that the ALJ "buil[t] an accurate and logical bridge from the evidence to [her] conclusions." *Arakas*, 983 F.3d at 95. "When the ALJ fails to build that logical bridge, the Court must remand for further proceedings." *Keffer v. Comm'r of Soc. Sec.*, No. 5:23-CV-00042-SCR, 2024 WL 3634212, at *2 (W.D.N.C. July 31, 2024).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff qualified as disabled under the Social Security Act. When an ALJ determines a claimant's disability status, she must assign the claimant an RFC grounded in the evidentiary record. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). In this case, the ALJ found that Plaintiff had the RFC to perform "medium work as defined in 20 CFR [§] 404.1567(c) . . . ." (Doc. No. 4-2 at 23). The ALJ explained that Plaintiff's RFC allowing performance of medium work excluded specific medium work involving

> frequent sitting, standing, and walking; frequent climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to hazards such as unprotected heights.

*Id.* Based on these findings, the ALJ concluded that Plaintiff did not qualify for disability benefits. *Id.* at 29.

Plaintiff argues the ALJ erred by (1) failing to recontact one of her medical examiners, Dr. Aregai Girmay, to clarify ambiguous statements in the latter's report and (2) improperly interpreting raw medical data. (Doc. No. 6 at 1). Given these alleged errors, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence. *Id.* The Court discusses Plaintiff's two issues in turn.

### A. Dr. Girmay's Consultative Examination

Plaintiff's first assignment of error concerns a report written by Dr. Girmay, one of several physicians who examined her between January 2021 and September 2024. *See* (Doc. Nos. 6 at 5–6; 4-2 at 24–26). Following a consultation with Plaintiff

in May 2021, Dr. Girmay wrote: "Impairment rating is moderate. [Plaintiff] can walk 100 feet without difficulty." (Doc. No. 4-7 at 5). The ALJ declined to incorporate Dr. Girmay's report into Plaintiff's RFC. *See* (Doc. No. 4-2 at 26). The ALJ explained:

> Although this assessment is ostensibly based on Dr. Girmay's findings on examination of [Plaintiff], the assessment of moderate impairment is vague and offers no insight into the nature of [Plaintiff]'s impairment. The clinical findings during this examination document no gait abnormalities to support a finding that [Plaintiff] would be unable to walk more than 100 feet. This opinion is so vague that I am unable to determine whether it is consistent with evidence from other medical or nonmedical sources. Therefore, Dr. Girmay's opinion is unpersuasive.

*Id.*

Plaintiff contends that the ALJ was not permitted to discard Dr. Girmay's opinion without first attempting to seek clarification from the doctor himself. (Doc. No. 6 at 5–6). An ALJ may—and sometimes must—recontact a medical source to clarify insufficient or inconsistent evidence. *See* 20 C.F.R. § 404.1520b(b)(2). Evidence is insufficient when it "does not contain all the information [an ALJ] need[s] to make our determination or decision." *Id.* § 416.920b(b). Evidence is inconsistent if, among other things, it "conflicts with other evidence" or "is ambiguous." *Id.* The necessity of recontacting the source of the evidence "depend[s] on the nature of the inconsistency or insufficiency." *Id.* § 404.1520b(b)(2).

In support of her argument that the ALJ needed to recontact Dr. Girmay, Plaintiff cites *Oakes v. Kijakazi*, 70 F.4th 207 (4th Cir. 2023). (Doc. No. 6 at 5–6). There, the Fourth Circuit considered an administrative decision that "seem[ed] to revolve around its rejection of [the consultative examiner's] opinion that [the

plaintiff] require[d] an ambulatory device." *Oakes*, 70 F.4th at 216. This "troubled" the court because the medical opinion had been ordered for the specific purpose of contextualizing an otherwise thin record. *Id.* at 217. Because this single piece of evidence "contain[ed] what ought to be an easily clarified ambiguity on a key issue," the Fourth Circuit held that the ALJ "should have 'take[n] additional actions' to seek clarification" regarding the report's ambiguous language. *Id.* at 213–14 (quoting 20 C.F.R. § 404.1520b(b)).

But *Oakes* does not sweep as broadly as Plaintiff argues. Rather, it requires remand when the ALJ fails to address ambiguous evidence on *key* issues. *Id.* The ALJ need not resolve every easily clarified ambiguity. *See, e.g.*, *Darden v. O'Malley*, No. 5:23-CV-700-D-KS, 2024 WL 5194838 (E.D.N.C. Nov. 22, 2024), (distinguishing the "notably sparse" record in *Oakes* from a "more robust" record that "include[d] treatment notes from multiple physicians spanning several years"), *report and recommendation adopted sub nom. Darden v. Colvin*, No. 5:23-CV-700-D, 2024 WL 5190023 (E.D.N.C. Dec. 20, 2024). Rather, as the Fourth Circuit explained earlier this month, "[t]he decision to credit [several other clinical] assessments over a less supported, one-time examination is a familiar exercise of the ALJ's authority to resolve any conflicting medical evidence." *Calhoun v. Comm'r of Soc. Sec.*, No. 24-1315, 2026 WL 2602326, at *6 (4th Cir. Sept. 3, 2026).

The ALJ exercised that familiar authority here. Although the ALJ did not incorporate Dr. Girmay's opinion into Plaintiff's RFC, her decision cited a litany of other record evidence to support her conclusion. *See* (Doc. No. 4-2 at 24–26). These

included the findings of other physicians, most of whom had examined Plaintiff more recently than Dr. Girmay. *See id.* The ALJ deemed these updated insights better indicia of Plaintiff's RFC. *Cf. id.* at 26–27 (finding older records "less persuasive because [they] did not have the benefit of considering new evidence regarding [Plaintiff]'s impairments"). The ALJ also credited "other," "nonmedical" evidence, including Plaintiff's noncompliance with her treatment plans and inconsistencies in Plaintiff's testimony. *Id.* at 25–26; *see also* (Doc. No. 4-7 at 332–33).

Put simply, the vagueness of Dr. Girmay's opinion did not prevent the ALJ from arriving at a reasoned conclusion. Because Dr. Girmay's examination was not "a key issue" around which the ALJ's decision "seem[ed] to revolve," *Oakes*, 70 F.4th at 214, 216, the ALJ did not err in declining to seek clarification. And because the ALJ cited and discussed other evidence to justify Plaintiff's RFC—particularly the findings of multiple other medical providers—the ALJ "buil[t] a logical bridge" from the facts to her conclusion. *Arakas*, 983 F.3d at 95. Plaintiff's first assignment of error is without merit.

Although Plaintiff concedes that an ALJ may dismiss a medical opinion if "the remainder of the record is sufficient to make a decision," she contends the record in this case does not qualify. (Doc. No. 6 at 6). In support, she directs the Court to her second argument, which alleges that the ALJ improperly substituted her lay interpretation of "raw medical data" at the expense of expert medical evaluations like Dr. Girmay's. *Id.* at 6–7. As discussed below, this argument fares no better.

**a. Lay Medical Opinion**

In her second assignment of error, Plaintiff asserts that the ALJ, a layperson, improperly interpreted the record's "raw medical data." (Doc. No. 6 at 7). Notably, Plaintiff does not identify specific findings in which she believes the ALJ to have committed this error. *See id.* at 7–10. Rather, she argues as a general matter that "the record before the ALJ, according to the ALJ, contained no opinion evidence from any medical professionals." *Id.* at 9. As justification, Plaintiff points to the ALJ's acknowledgment that "[t]he state agency consultants found there was insufficient evidence to render an opinion" on disability. *Id.*; *see also* (Doc. No. 4-2 at 26).

Plaintiff's argument is inconsistent with both the governing regulations and Fourth Circuit precedent. To be sure, "[a]n ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings." *Arakas*, 983 F.3d at 108; *see also Mark A. B. v. Kijakazi*, No. 1:22CV834, 2023 WL 9381904, at *8 (M.D.N.C. Dec. 15, 2023) (explaining that ALJs may "not engage in 'playing doctor'"). But this does not mean the ALJ must take a medical expert's view at face value. In fact, the opposite is true: "ALJs must 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'" *Drumgold*, 144 F.4th at 604 (quoting 20 C.F.R. § 404.1520c(a)).

Therefore, when "medical sources arguably point in different directions . . . . the duty to resolve this conflicting medical evidence lies with the ALJ." *Id.* at 605 (quotation omitted). This is because "the ALJ . . . has the responsibility to make findings of fact and resolve evidentiary conflicts." *Swan v. Berryhill*, No. 5:16-CV-00167-RN, 2017 WL 1957000, at *4 (E.D.N.C. May 10, 2017).

The ALJ's obligation to resolve conflicting medical evidence neither requires nor allows the ALJ to interpret raw medical data. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (explaining that the RFC is an "administrative assessment . . . based on all the relevant evidence in the case record" and rejecting the plaintiff's argument that the ALJ needed to obtain an expert medical opinion); *Arakas*, 983 F.3d at 108. Instead, it asks the ALJ to evaluate the persuasiveness of medical data as interpreted by the medical professionals who recorded it. *Cf. Felton-Miller*, 459 F. App'x at 230 n.2 (explaining that it was proper for the ALJ to assess the plaintiff's RFC using "technical" medical records that had been "interpreted in functional terms by the examining physician").

The ALJ did just that here. First, the ALJ recited the objective medical evidence as relayed by Plaintiff's examiners. *See, e.g.*, (Doc. No. 4-2 at 24–26 ("[T]reatment records document . . . . [T]he provider noted . . . . [E]xamination revealed . . . .")). Then, the ALJ evaluated the persuasiveness of those assessments as they related to the rest of the evidence. *See, e.g.*, *id.* at 26; *see also* (Doc. Nos. 4-2 at 24–26; 4-7 at 32–33, 80–82, 332–33). As just one example, the ALJ found Plaintiff's reports of a "persistent shortness of breath" unpersuasive because they conflicted with "the lack of respiratory abnormalities noted on examinations in February 2021, May 2021, July 2021[,] October 2022[,] . . . . March 2023, May 2023, July 2023, October 2023, and December 2023." (Doc. No. 4-2 at 24). This is precisely the sort of credibility determination that falls within the ALJ's role as fact-finder. *Drumgold*, 144 F.4th at 604; *Calhoun*, 2026 WL 2602326, at *3. Because the ALJ did not

interpret raw medical data, Plaintiff's second assignment of error fails.

The Court may not override the ALJ's decision "unless it is exceptionally clear that the ALJ made a mistake." *Drumgold*, 144 F.4th at 605. No such mistake occurred in this case. The ALJ scrutinized the record in its entirety, assessed the relative credibility of the evidence within it, and used those determinations to arrive at Plaintiff's RFC. In so doing, the ALJ built the requisite logical bridge between the facts and her conclusion and demonstrated that substantial evidence supports her denial of Social Security benefits. Because the ALJ's decision is supported by substantial evidence and uses the correct legal standards, the Court will affirm.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Commissioner's decision is **AFFIRMED.**

**SO ORDERED.**

Signed: September 17, 2026

Matthew E. Orso
United States District Judge